## TEXAS STEEL CO. et al. v. HUEY & PHILP HARDWARE CO. et al.

### No. 13616.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 12, 1937.

Rehearing Denied Dec. 17, 1937.

George W. Armstrong, of Fort Worth, for appellant Texas Steel Co.

J. A. Templeton, of Fort Worth, for remaining appellants and interveners.

Alvin H. Lane, of Dallas, for appellees Huey & Philp Hardware Co. and R. F. Henderson.

F. W. Bartlett, W. L. Thornton, and O. D. Montgomery, all of Dallas, for appellee American Surety Co. of New York.

DUNKLIN, Chief Justice.

Huey & Philp Hardware Company, a Texas corporation, instituted this suit against Staples & Fowzer, another Texas corporation, and against Frank Fowzer, individually, to recover an indebtedness of $1,399.48, and, upon its application therefor, R. F. Henderson was appointed receiver of the assets of the defendant corporation. The receiver took charge of such assets and operated the business theretofore carried on by Staples & Fowzer. The Texas Steel Company, Midcontinent Metal Alloys Company, Fort Worth Well Machinery Company, Bowdry & McKinley Company, and Clem Lumber Company all filed pleas of intervention, based on claims for supplies sold to the receiver during the receivership.

There have been two trials of the suit. On the first trial judgment was rendered denying the interveners certain relief sought from which they appealed, and that appeal was disposed of by the El Paso Court of Civil Appeals, appearing in 79 S.W.2d 636.

As shown in that opinion, the judgment of the trial court, in favor of plaintiff Huey & Philp Hardware Company and in favor of the International Supply Company against the Staples & Fowzer Company for the debts sued for by them respectively, was affirmed; and leaving undisturbed judgments rendered by the trial court in favor of the interveners respectively against the receiver as receiver for the amounts of their claims; also affirming the classification by the trial court of the various claims shown in its judgment. But the cause was remanded because of insufficiency of the report filed by the receiver to show earnings of the property while in his hands and disposition made by him of the assets and earnings, all of which was necessary to a determination of the merits of the contention of appellants that they were entitled to judgment against the receiver and the surety on his bond for mis-application of assets of the estate, for wrongful preferences shown to other creditors, and other questions presented in briefs of the interveners.

The history of the receivership proceedings, including the transactions by the receiver, together with the pleadings, are all shown in the opinion so rendered by the El Paso Court.

The record shows that the receivership continued from November 20, 1929, until December 28, 1933, and on said latter date the receiver made his final report, which was accepted and approved by the court and he was then finally discharged. No assets were left in his hands and defendant Staples & Fowzer Company was insolvent.

In their amended pleadings, filed after remand of the case, interveners alleged that the claims upon which they recovered judgment against the receiver were for supplies sold to him during the receivership; that said claims should be classed as third-class claims under provisions of article 2299, Rev.Civ.Statutes, and was approved as such on the former appeal; that as claims of that class they were superior to certain claims paid by the receiver on certain secured and unsecured indebtedness of the defendant to plaintiff and its subsidiary, the Ajax Finance Corporation, incurred prior to the receivership; with further allegations that some of the funds so used by the receiver represented profits realized by him during receivership operations and on which profits interveners were given a prior lien by article 2299, Rev.Civ. Statutes.

They alleged further that the appointment of the receiver and operation of the business by him as such were all wrongfully procured by plaintiff for the purpose of collecting prior indebtedness to it and the Ajax Finance Corporation, to the exclusion of other and superior claims. They prayed for personal judgments against plaintiff and the receiver and the American Surety Company, surety on his receivership bond, jointly and severally, for the amounts due and owing on their judgments against the receiver, as such receiver, which were affirmed on the former appeal.

The plaintiff, the receiver, and the surety on his bond, filed general demurrers, general denials with allegations of special facts in answer to those pleas of intervention.

On those pleadings, which were substantially the same as on the first trial, and the amended final report of the receiver made

to cure defects in his former reports pointed out on the former appeal, which report was accepted by all parties as correct, the case was again tried before the court without a jury. Upon that trial the affirmance by the Court of Civil Appeals of the former judgments in favor of plaintiff and the International Supply Company against defendant Staples & Fowzer and in favor of the interveners against the receiver in his official capacity were treated by all parties to the suit and by the trial court as final and binding as to all the parties.

That trial was for determination of the issues left undetermined on the former appeal as pointed out in the opinion of the Court of Civil Appeals. But judgment was rendered approving that final report of the receiver and decreeing that the receiver had "in all things faithfully administered the affairs of this estate in accordance with the orders and directions of this Court, and that he has satisfactorily accounted for all property and funds entrusted to his care herein, and that no further assets of any character belonging to this estate now remain for administration in this cause, said receiver and his bondsman, American Surety Company of New York, are hereby finally discharged from all further liability by reason of the administration of this estate by said receiver, and by reason of the execution of their bond filed herein on, towit, November 26, 1929."

By its further decree interveners were denied any recovery against the plaintiff or against the receiver or the surety on his bond.

The interveners have appealed.

■ The record shows that in order to carry on the business authorized and ordered by the court certain supplies were necessary for use in such operations. The receiver procured an order of court authorizing him to purchase such supplies and with that authority he purchased the same from plaintiff, aggregating in price some $5,300, and out of assets in his hands he paid $3,800 cash on that account and other later payments, leaving an unpaid balance of some $800, which was never paid. Those expenditures were properly chargeable, at least in equity, as court costs and a first lien on the earnings and superior to third-class claims for supplies purchased for the improvement of property in the receiver's hands, within which latter class interveners alleged their claims were included. 36 Tex.

Jur. § 118, p. 238, and decisions there cited, § 131, p. 255. Nor does article 2299 purport to give a lien on the corpus of the property to secure payment of third class claims.

■ Furthermore, interveners having elected to recover judgment for their claims against the receiver in his official capacity, thus treating the receivership as valid, they are now estopped to claim liability of plaintiff and the receiver personally for their judgments, on the inconsistent theory that the receivership was illegal from its incipiency because wrongfully procured by plaintiff. And such estoppel is conclusively shown on the face of interveners' pleadings. 15 Tex.Jur § 3, p. 821; § 7, p. 828; § 9, p. 832; 17 Tex.Jur. § 6, p. 134; 26 Tex.Jur. pp. 35 to 42, inclusive; Smith v. Chipley, 118 Tex. 415, 16 S.W.2d 269.

Moreover, the evidence pointed out by appellants in support of their allegations, to the effect that appointment of the receiver and his operations as such were all wrongfully brought about by plaintiff for the purpose stated above and that said operations by the receiver were performed by him with the intention and design to assist plaintiff in accomplishing his said purpose, and by reason of which plaintiff and the receiver each became personally liable for interveners' judgments, consisted chiefly of the following: Appointment of A. H. Lane as attorney for the receiver when he was already plaintiff's attorney, employed to institute the suit, and was also a member of plaintiff's board of directors; organization of the Staples Bit Company with plaintiff's assistance to take over a patent right for manufacturing a bit for use in drilling operations by the receiver and contributing to the payment of fees for that patent; ownership by plaintiff of stock in that corporation in conjunction with ownership of other stock by the receiver personally and by plaintiff's said attorney; sale of supplies to the receiver for drilling operations to be paid for out of receivership funds, loan of $3,000 of receivership funds to the Staples Bit Company and repayment of same by its stockholder; together with other incidental circumstances of minor importance, not necessary to be enumerated. The argument advanced is, in effect, that those facts were sufficient as a conclusion of law to sustain the allegations of wrongful procurement of the receivership by plaintiff and by reason of which it was liable for payment of interveners' judgments against the receiver in his official capacity.

■ We cannot sustain that contention. That was an issue of fact and the findings of the court thereon in favor of plaintiff was amply supported by other evidence, to the effect that in seeking appointment of a receiver and doing the things noted above, the plaintiff acted in perfect good faith and for the benefit of all defendants' creditors according to their legal rights; that the money advanced to the receiver was furnished with no expectation of benefit therefrom to plaintiff, to the injury of any other creditor, and in the hope that from the business sufficient funds might be realized to pay all creditors. Furthermore, in interveners own pleadings the insolvency of the defendant was alleged and there was neither allegation nor proof that there was no necessity for appointment of the receiver. 36 Tex.Jur. § 77, p. 164; § 82, p. 172; Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 88 Tex. 468, 27 S.W. 100; 53 C.J. 172; Atlantic Trust Co. v. Chapman, 208 U.S. 360, 28 S.Ct. 406, 52 L.Ed 528, 13 Ann.Cas. 1155.

Decisions cited by appellant, namely, Mayotown Lumber Co. v. Nacogdoches Grocery Co. (Tex.Com.App.) 236 S.W. 704, and Craver v. Greer, 107 Tex. 356, 179 S.W. 862, are easily distinguishable from the present suit on the facts and therefore cannot control.

Nor did interveners seek a recovery against plaintiff or the receiver on the theory of fraud or negligence.

■ There was evidence sufficient to support the further implied finding that the Ajax Finance Corporation was not a subsidiary and a part of plaintiff corporation, as alleged, but was a separate and independent legal entity with rights separate and distinct from plaintiff corporation; and that the Ajax Finance Company took no part in procuring the appointment of the receiver. Hence, payments to the latter company of the proceeds of the sale of certain equipment and supplies on which it held a chattel mortgage prior to the receivership was proper because that property was taken by the receiver subject to the mortgage. 36 Tex.Jur. § 135, p. 264; Craver v. Greer, 107 Tex. 356, 179 S.W. 862.

■ Appellants cite one item in the auditor's report indicating that the receiver realized a profit from a certain transaction, and argue that they were given a prior lien thereon by terms of article 2299, Rev.Civ. Statutes, and therefore they were entitled to recover against the receiver and his official surety, on the theory that the use of those profits in the course of the receivership was an unlawful conversion of those profits for which he became liable. That contention is without merit because those funds were necessary to carry on the operations undertaken by the receiver authorized by the court and were approved by the court by order duly entered, and so used long before termination of the receivership; and further the contention amounts to a collateral attack on those orders of the court vested with jurisdiction to make them. 36 Tex.Jur. § 118, p. 238; § 131, p. 255; § 128, p. 250.

■ Near the close of the receivership the receiver had on hand, in Hobbs, N. M., a lot of heavy machinery which he was unable to dispose of. Believing it would be advisable to ship the same to Dallas but being without funds to pay the freight or to do anything else in connection with the business, he applied for and procured an order of the court in which the receivership was pending authorizing him to conclude a contract theretofore made subject to the approval of the court, by the terms of which plaintiff was to pay the freight to Dallas, amounting to about $1,000, and in consideration therefor the receiver would permit plaintiff to sell the same as the property of the receiver and to pay plaintiff a commission for making the sale, and the receiver would return to plaintiff a balance remaining of certain supplies theretofore purchased from plaintiff, and would be allowed credit therefor at invoice prices on the balance owing by the receiver for those supplies. The contract was carried out by the parties; and after the machinery was shipped to Dallas it was sold by the receiver, but plaintiff was not a purchaser nor interested in that sale.

The trade so made with plaintiff was for the purpose of disposing of the machinery so shipped to Dallas and realizing something therefor and without which it could not have been disposed of at all. The act of the receiver in taking back a remnant of supplies theretofore purchased from plaintiff at the selling price was one of the acts necessary to a disposition of the machinery and properly chargeable as one of the necessary expenses of the receivership which could not be successfully challenged by the interveners. 36 Tex.Jur. § 77, p. 164; § 110, p. 221; § 113, p. 226; § 112, p. 224; § 128, p. 250; § 131, p. 255.

The facts last noted were insufficient to establish liability of either plaintiff or the receiver personally for interveners' judgments against the receiver in his official capacity, and the same is true of all other facts noted above. First National Bank v. Cohen (Tex.Civ.App.) 55 S.W. 530; Atlantic Trust Co. v. Chapman, 208 U.S. 360, 28 S.Ct. 406, 52 L.Ed. 528, 13 Ann.Cas. 1155; 53 C.J. 172; also authorities cited above.

From our foregoing findings and conclusions, it follows that all assignments of error must be overruled and the judgment of the trial court affirmed; and it is so ordered.