ROCK HOUSE FARM, INC., Appellant,

v.

RIDGEWAY LION'S CLUB, Respondent.

No. WD 49486.

Missouri Court of Appeals,
Western District.

March 14, 1995.

John R. Sanderford, Kansas City, for appellant.

Roscoe E. Moulthrop, Jr., Bethany, for respondent.

Before BRECKENRIDGE, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

ELLIS, Judge.

Rock House Farm, Inc. ("Rock House"), is the owner of certain real property which includes part of a lake in Harrison County, Missouri. In January, 1976 the Ridgeway Lion's Club ("Ridgeway") leased 8.18 acres of the property, which is adjacent to and part of the lake, for a term of 99 years. The lease provided that Ridgeway would use the land for a park and recreational area consistent with the purposes of the Ridgeway Lions Club, and further that it would have the right to use the lake portion of the leased premises for fishing, boating, water skiing, and recreational purposes, and that it could permit others to use the leased premises.

Since 1990, this lease has been the subject of three lawsuits brought by Rock House against Ridgeway regarding Ridgeway's use of the leased property and adjoining lake. The first suit was filed on June 27, 1990. In that case, Rock House, in Count I, sought to have the lease terminated for inadequate consideration and in Count II contended the lease was ambiguous and asked the court to construe it. On January 25, 1991, the circuit court entered judgment in favor of Ridgeway on both counts, finding adequate consideration and no ambiguity.

On November 12, 1991, Rock House filed a second two-count suit against Ridgeway. Count I of this petition contended Rock House had properly withdrawn its offer to lease to Ridgeway the waters of the lake prior to Ridgeway's acceptance of the offer because Ridgeway failed to deliver the agreed consideration of $500.00 to Rock House. Under this count, Rock House claimed Ridgeway's use of the land was trespass. Count II sought an injunction to prohibit certain activity on the lake waters which Rock House claimed unreasonably deprived it of its peaceful enjoyment of the lake and surrounding property owned by Rock House. Ridgeway filed an answer and cross-petition in that action. The cross-petition alleged Rock House had interfered with Ridgeway's rights under the lease agreement and sought damages. Ridgeway also filed a motion for summary judgment, contending Rock House's petition was barred by the doctrine of res judicata. On May 18, 1992, the trial court granted the Motion for Summary Judgment as to Count I but overruled the motion as to Count II as to acts or conduct allegedly committed by Ridgeway after January 25, 1991. On October 23, 1992, Rock House filed a dismissal without prejudice pursuant to Rule 67.02, and the case proceeded to trial only on Ridgeway's cross-petition. On December 21, 1992, the trial judge issued findings of fact and entered judgment dismissing Count II of Rock House's petition without prejudice and holding Ridgeway's cross petition for naught, "with the sole exception that the status of the parties be, and hereby is subject to the findings of fact as set forth herein." [1]

1. The findings of fact in the December 21, 1991 judgment stated:
  1. [Ridgeway] ... has a defined right to use the described property, a lake, for fishing, boating, water skiing, and recreational purposes, and that [Ridgeway] shall be entitled to permit others to use the lake.
  2. [Ridgeway's] use of the lake and described property is primary, and [Rock House's] use is secondary to that of [Ridgeway].
  3. [Ridgeway] has the authority and right to regulate the use of the premises and lake with reasonable rules and regulations not inconsistent with the lease. In fact, the lease supports a finding that they have done so by limiting or prohibiting water skiing, hunting and speed boating.
  4. [Rock House] has the right to regulate the use of the lake so long as it is not inconsistent with the reasonable rules and regulations established by [Ridgeway] and the terms of the lease.
  5. Any rules and regulations established by the parties are subject to the rules and regulations established by the Conservation Commis-

On May 12, 1993, Rock House filed a third two-count petition against Ridgeway. In Count I, Rock House admitted the existence of the lease dated January 19, 1976, but contended that the leased property had been used for purposes other than those specified in the lease agreement and that under the terms of the lease, this unauthorized use resulted in reversion of the property to Rock House. In Count II, Rock House again sought an injunction to abate certain activities on the waters of the lake as a temporary nuisance. Ridgeway filed a Motion for Summary Judgment, contending both Count I and Count II were barred by the doctrine of res judicata. Rock House filed a reply to the motion for summary judgment and an affidavit detailing some of the activities which had occurred on the lake waters and in the park which were not specified in the lease. On February 9, 1994, after a hearing on Ridgeway's Motion for Summary Judgment, the trial court granted summary judgment as to both Count I and Count II. Rock House now appeals the trial court's granting Ridgeway's Motion for Summary Judgment in the third suit.

"Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is purely an issue of law which we review *de novo* on the record submitted and the law. *Id.*

When reviewing the entry of summary judgment, we view the evidentiary record in the light most favorable to the party against whom summary judgment was granted, determine if any genuine issue of fact exists which would require a trial, and determine if the judgment is correct as a matter of law. We will affirm if the judgment is sustainable as a matter of law under any theory.

*State ex rel. Conway v. Villa*, 847 S.W.2d 881, 886 (Mo.App.1993); Rule 74.04(c). A genuine issue of fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382.

Rock House raises two points on appeal. First, it contends the trial court erred in sustaining Ridgeway's motion for summary judgment as to Count I on the basis of res judicata because Count I of the third petition raised new legal and factual issues. Specifically, Rock House claims that the January 25, 1991 judgment found the lease agreement to be unambiguous and supported by adequate consideration. The action filed in May, 1993, Rock House argues, did not question the underlying validity of the lease agreement or raise the issue of ambiguity or sufficiency of consideration, but rather Count I admits the existence of the lease agreement and raises the claim that Ridgeway's activities on the property are of such a nature that the property should, by the terms of the lease, revert to Rock House.

In its second point, Rock House contends the trial court erred in sustaining Ridgeway's motion for summary judgment as to Count II on the basis of res judicata because Count II of the May, 1993 petition raised new legal and factual issues based on conduct occurring on the premises. Rock House asserts the January 25, 1991 judgment addressed the issues of ambiguity and adequate consideration while the current petition to abate temporary nuisance addresses specific conduct occurring on the premises. It argues that the claim under Count II was first raised in the second suit in November, 1991. In that second suit, Ridgeway's motion for summary judgment was overruled on that count as to activities occurring since the first judgment (January 25, 1991). Rock House then dismissed that claim without prejudice. Therefore, Rock House claims the issues raised and the relief sought in Count II have not

sion of Missouri in regard to hunting and fishing.

6. In the absence of rules and regulations by [Ridgeway], [Rock House] has authority to

establish and enforce reasonable rules and regulations within the limits of Findings 4 and 5 above.

been adjudicated and are not barred by res judicata.

■ "For res judicata to adhere, 'four identities' must occur: 1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made." *King Gen. Contractors v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. banc 1991). Under both counts, Rock House contends that because the January 1991 case only addressed issues of consideration and ambiguity, and since the present petition addresses certain conduct, the identity of the cause of action is not present and res judicata does not adhere. However, "[res judicata] applies not only to points and issues upon which the court was required by the pleadings and proof to form an opinion and pronounce judgment, but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." *Id.* In other words, a party may not litigate an issue and then, upon an adverse verdict, revive the suit on grounds which could have been brought in the first proceeding. *Id.*

The first suit challenged the validity of the lease agreement. Under the doctrine of res judicata and the rule against splitting a cause of action [2], Rock House was required to raise all issues regarding the lease and the property subject to the lease in that first suit. Any issue relating to the validity of the lease or alleged actions on the property in violation of the lease were res judicata on January 25, 1991. Thus, any action brought on the lease after January 25, 1991 had to allege actions or conduct occurring only after that date. The trial court correctly determined this in its judgment following the second suit when it held that only the actions complained of in Count II of that petition occurring after January 25, 1991 survived summary judgment. Because the surviving issue from the second suit was dismissed without prejudice, that issue (regarding conduct after January 25, 1991) is still alive: it is not barred by the

doctrine of res judicata. Consequently, the only issue which is not res judicata concerns actions or conduct occurring only after January 25, 1991.

■ Under both points raised in this appeal, Rock House claims that the two counts in its May 12, 1993 petition are complaining of acts occurring since the January 25, 1991 judgment. However, there are no allegations in either count of the petition to that effect. Rather, the only pertinent allegation in the petition states:

That Defendant, Ridgeway Lion's Club, Inc., has encouraged and promoted dangerous and inappropriate activities on said Lake to include but not limited to: hunting, speed boating, jug line fishing, after sunset activities involving alcohol and high powered boats, trap shooting and target practice.

Ridgeway also filed an affidavit with its reply to motion for summary judgment in which the affiant declares he has personal knowledge of hunting, target shooting, trap shooting, fireworks, speed boating and jet skiing on the lake, after sunset activities and parties on the lake, and harvesting and bailing hay. Nowhere, in any of these documents, is it specified that the activities occurred only after January 25, 1991. Nevertheless, *res judicata* is an affirmative defense. Rule 55.08. It is not self-proving, and evidence to support the defense must be adduced. *Rippe v. Sutter*, 292 S.W.2d 86, 89 (Mo.1956). The only evidence presented at the hearing before the trial court was the testimony of a Conservation Agent regarding activities permitted on the lake under state law. Copies of the prior judgments were attached to Ridgeway's motion for summary judgment. However, the pleadings, transcripts and other documents from those cases were not presented to the court, nor are they contained in the record before us.

It may well be that the trial court in fact ruled the motion only after examining the files of his court …, and it may be that the trial court took judicial notice of those records. The difficulty is, however, that

2. Res judicata and splitting a cause of action are "closely related." *King Gen. Contractors v. Reor-* *ganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d at 501.

nothing ... enables us to determine what it was the trial court judicially noticed, and, consequently, to determine whether the matters of which the court may have taken judicial notice did cause the issues in the instant case to be res judicata.

*Classe v. Dalton,* 688 S.W.2d 396, 396–97 (Mo.App.1985) (*quoting Rippe,* 292 S.W.2d at 89–90). While the petition does not make it clear that the events complained of occurred after January 25, 1991, from the record before us, we cannot say that they did not, nor can we say that they are identical to those complained of in the prior cases. Under these circumstances, we conclude that summary judgment was improper.

The trial court's grant of summary judgment is reversed and the case is remanded for further disposition.

All concur.

